**FIRST OKLAHOMA BANK, N.A., a National Banking Association, Appellee,**

v.

**Patrick O. SPARKMAN, Appellant.**

**No. 78193.**

Court of Appeals of Oklahoma, Division No. 3.

Nov. 24, 1992.

Certiorari Denied March 31, 1993.

David A. Cheek, Oklahoma City, for appellant.

C. Brad Henry, Shawnee, for appellee.

## OPINION

HANSEN, Vice–Chief Judge:

First Oklahoma Bank, (Bank) received a judgment against Appellant Patrick Sparkman for $90,000.00. This appeal arises from actions taken by Bank to collect the judgment. Bank attempted to execute against corporate stock owned by Sparkman in two companies. The stock was subject to corporate buy-sell agreements. These agreements provided:

In the event of bankruptcy of a Stockholder, execution by a third party upon assets of a Stockholder, or any other circumstance resulting in the involuntary transfer or potential involuntary transfer of said stock to a third party, the undersigned hereby agree that the Stockholder whose interest is not subject to an involuntary transfer shall have the right to elect to purchase the stock subject to involuntary transfer, and that said right is a right and option created at the time of the execution of this Agreement, and if said right and option is exercised and said remaining Stockholder shall have a reasonable period to elect to exercise said right and option, and if said remaining Stockholder elects to purchase the stock, written notice of said election must be-

gin, and the purchase of the stock by the remaining stockholder must be completed within thirty days from the date of said notice. In the event the remaining Stockholder elects to purchase said stock, the price for the stock shall be the value of such stock as determined under Article 2 endorsed on Schedule A hereto.

Article 2A. provides:

The value of each share of stock of the Corporation shall be determined by the Stockholders on the date this Agreement is signed and becomes effective.

In 1984, on the date the stockholders signed the agreements, the per share value was $10.00.

The agreements also provided for periodic revaluation.

Article 2B. provides:

The value of each share of stock of the corporation as determined under paragraph A of this article shall be redetermined by the Stockholders at the end of each fiscal year of the Corporation. If the Stockholders are unable to agree on a new value within thirty days after the close of the fiscal year of the Corporation, then the value shall be fixed by arbitration. Each Stockholder shall appoint an arbitrator within sixty days after the close of the fiscal year of the Corporation if arbitration is required. If the arbitrators cannot agree upon a value within thirty days after their appointment, then upon request of either stockholder, the matter shall be submitted to binding arbitration by an arbitrator appointed by the American Arbitration Association.

Article 2C. states:

In the event the value of each share of stock is not redetermined by the Stockholders at the end of each fiscal year as set forth above or in the event no arbitrator is appointed within the time frames set forth hereinabove, then the value of each share of stock as last agreed to and set forth on Schedule A attached hereto, shall control.

Schedule A sets the value of the stock at $10.00. Neither party claims the stock has

ever been revalued under subsection B. above.

After a hearing on assets and attempts to obtain copies of the agreements, the matter came to trial on Bank's request for execution. The trial court issued its order in aid of execution requiring delivery of the stock. The trial court found the stock was not exempt by law and was available for application toward the satisfaction of the judgment. It further found the stock was subject to the agreements, and that the agreements were valid and enforceable and not fraudulently made. It ordered Sparkman to deliver possession of the stock certificates to Bank. The order stated that the stock could be executed upon and sold by Bank, subject to the agreements, after valuation as provided in the agreements. Finally, it decreed Bank was entitled to exercise and participate in the stock valuation procedure described in Article 2 of the agreements. It is this final decision upon which Sparkman bases his appeal.

Sparkman concedes the stock is not exempt and that Bank has every right to execute on the stock. Sparkman alleges on appeal that the trial court rewrote the agreements by granting Bank rights beyond those allowed by the agreement. He argues Bank is a creditor, not a stockholder or a bona fide purchaser.

■ Bank counterappeals arguing it should have been allowed to execute on the stock without regard to the agreements. In dealing with the counterappeal we hold the trial court was correct in finding Bank's levy of execution fixed a lien in its favor on the stock subject to the agreement. A levy of execution fixes a lien in favor of the judgment creditor only to the extent of the debtor's actual interest. *Hamilton v. Brown*, 31 Okla. 213, 120 P. 950 (1912). In this case Sparkman's interest in the stock was subject to the agreements, if the agreements are valid. The trial court found the agreements to be valid, and we are unconvinced by Bank's argument, without supporting authority, that the agreements are unenforceable against a third party creditor. A plausible but not convincing argument in the brief unsupported by citation of authority is not sufficient to overcome the presumption of correctness of the judgment of the trial court. *Sunco Manufacturing Company v. Hargrove*, 581 P.2d 925 (Okla.App.1978).

Sparkman's allegations of error are more troubling. He claims the trial court had no authority to modify the buy-sell agreement. He cites us to *Renberg v. Zarrow*, 667 P.2d 465 (Okla.1983). In that decision the personal representative of a deceased shareholder's estate brought an action against the surviving shareholders to prevent the transfer of shares pursuant to a buy-sell agreement. The Supreme Court affirmed the trial court's judgment ordering the transfer of shares to the surviving shareholders over the objection of the personal representative of the deceased shareholder. The Supreme Court said although absolute restrictions forbidding the alienation of corporate stock are invalid, reasonable restrictions are not. The personal representative attacked the method of valuation of the stock contained in the buy-sell agreement. The Supreme Court held courts could not rewrite a stockholders' agreement under the guise of relieving one of the parties from the apparent hardship of an improvident bargain. The case did not involve an involuntary transfer.

■ Levy on property creates a lien thereon. Although the stock has not been sold by the sheriff, Bank does have an interest in the stock by operation of law. However to contest the validity of a stockholders' agreement, a person must be either a third-party beneficiary or a party to the agreement. *Renberg v. Zarrow, supra*. Bank is neither.

Under the agreements, if the stock is not revalued, its worth is $10.00 a share. Bank believes it to be worth much more and strenuously objects to any sale, either by the sheriff or under the agreements, without revaluation. We agree.

■ Inasmuch as ownership and management of close corporations are so intimately related, shareholders usually desire to retain power to choose future associations by means of share transfer restric-

tions. But shareholders' interests must be balanced against traditional right of alienability of personal property. *Gray v. Harris Land and Cattle Company,* 737 P.2d 475 (Mont.1987). Likewise, these rights must be balanced against rights of creditors holding judgments against a stockholder. Where a corporate stockholder is bound by a restrictive resolution affecting the stock, such stockholder's successor in interest must assume his transferor's obligations regarding the resolution and is bound by the resolution. *See, Nordin v. Kalenbaugh,* 435 P.2d 740 (Ariz.Ct.App. 1968).

The buy-sell agreement, being valid, the stock must first be offered to those within the class defined in the agreement, but at a fair value, to be determined under the provisions of the agreement by the interest holders, including Bank. If the interest holders cannot agree, the provision in the agreement providing for submission to arbitration must be followed. We hold the trial court acted within its authority, and wisely.

AFFIRMED.

BAILEY, P.J., and HUNTER, J., concur.