## LIPPERT BROS., Inc. v. CITY OF ATOKA.
### Civ. No. 2654.

United States District Court
E. D. Oklahoma.

Dec. 9, 1950.

Leon Shipp, Oklahoma City, Okl., for plaintiff.

Paul and McPheron, Durant, Okl., for defendant.

## WALLACE, District Judge.

### Preliminary Statement

Lippert Bros., Inc., plaintiff, brings this action for money damages in the amount of $8,200.00. The sum is alleged to be due and owing by the City of Atoka, defendant, for work and material furnished by plaintiff under a contract for water works and sewage disposal improvements.

The defendant admitted liability in the sum of $4,075.00, but denied owing the additional $4,125.00 because it alleges that sum represents 2750 square feet of gunite repair work unauthorized by the contract or amendments thereto. In addition, the City counterclaims in the amount of $975.00, alleging the plaintiff did not complete the contract according to specification in the following particulars:

(1) Installation of a two arm distributor instead of a four arm distributor, difference in value $500.00.

(2) Non-installation of scum removal equipment, value $400.00.

(3) Non-completion of landscaping, value $75.00.

The plaintiff admitted the non-completion of the landscaping, but denied the allegations of the first and second counterclaim.

### Findings of Fact

#### I.

Lippert Bros. Inc., plaintiff, is an Iowa corporation. City of Atoka, defendant, is an Oklahoma municipal corporation. The controversy involves the sum of $8,200.00, exclusive of interest and costs.

#### II.

The City, acting through its municipal officers, approved the construction of water works and sewage disposal extensions. Plans and specifications were drawn and approved. Bids were submitted. Plaintiff's bid was accepted by the City and a contract was entered into by the parties on August 16, 1948. By the terms of the contract, plaintiff agreed to construct all of the approved construction work.

#### III.

Included in the plaintiff's bid were two changes from the original plans and specifications that are herein material: a two arm distributor was substituted for a four arm distributor; the scum removal equipment referred to in defendant's counterclaim was not in plaintiff's bid. These two changes were approved by V. V. Long and Company, defendant's engineers, and were a part of plaintiff's bid which was accepted by the City.

#### IV.

The engineer's estimate of the amount of gunite repair required was 2400 square feet, and the unit price was $1.50 per square foot. The plans and specifications do not stipulate a fixed amount of gunite repair, but only specify a particular area to be covered by gunite lining.

#### V.

The plaintiff has performed the work it agreed to do by the terms of the contract of August 19, 1948, as modified by subsequent agreements not herein material, except landscaping in the amount of $75.00. In particular, as concerns this action, the plaintiff completed only the gunite lining required by the plans and specifications. The total amount furnished was 5,150 square feet of gunite lining. The plaintiff installed a two arm distributor as enumerated in its bid that was accepted by the City. The plaintiff did not install certain scum removal equipment, but it omitted this item in its bid that was accepted by the City.

#### VI.

An inspector for the defendant was present and observed the work performed by the plaintiff. The inspector knew, or should have known, of the installation of the gunite lining and the approximate amount of labor and material furnished by the plaintiff.

#### VII.

The City's engineer has not approved the gunite repair work in excess of 2400 square feet. The contract provides that the engineer's approval shall be final and conclusive as to the amount of work and materials furnished to complete the contract; and

his determination and estimate shall be a condition precedent to the right of the contractor to receive any money under the contract.

### VIII.

The gunite repair work was not subcontracted, but was done under the supervision and control of the plaintiff.

### IX.

The City held $125,000.00 in its treasury from a bond issue on the date of the signing of the contract. The bond issue funds were accrued for the purpose of constructing municipal water works and sewage disposal extensions which was the construction work completed by the plaintiff. The total amount due under the terms of the contract between the parties is $111,572.00, of which the City has made payments in the sum of $103,372.00.

### X.

There remains due and owing to the plaintiff by virtue of performance of the contract, the sum of $8,125.00.

### Conclusions of Law

### I.

The court has jurisdiction over the parties and subject matter of this action.

### II.

■ The construction of a contract is a question of law for the court.

### III.

■ In construing a contract, the intention of the parties should be ascertained and given effect if consistent with legal principles.

### IV.

■ To determine the intent of the parties to an ambiguous construction contract, the plans and specifications, the published notice to bidders, the bid of the contractor, as well as the language of the contract, should be examined.

### V.

■ It was the intent of the parties to this action that the contractor, plaintiff, should be paid on a unit price basis for work performed. City of Hobart v. Dailey, 170 Okl. 107, 39 P.2d 44.

### VI.

■ The engineer's original estimates were not intended to be conclusive as to the amount of work to be done. A clause in the instructions to the bidders, in part, reads:

"The Engineer's estimate of quantities as shown on the plans is approximate only * * * and shall not be construed by the bidders as the actual quantity that may be required for the completion of the proposed work."

A section in the general conditions of the contract provides: "The division into items has been made to enable the contractor to bid on the different portions of the work in accordance with his estimate of the unit cost, so that in the event of any increase or decrease in the quantity of any particular kind of work, the actual quantity executed may be paid for at the unit price bid for that particular kind of work."

### VII.

■ If parties to a construction contract designate an engineer as arbiter of amount and character of work done and amount due contractor, engineer's approval is binding on the parties, but may be avoided upon showing of actual fraud or gross mistake constituting constructive fraud. See City of Lawton v. Sherman Machine & Iron Works, 182 Okl. 254, 77 P.2d 567.

### VIII.

■ The non-approval by the defendant's engineer of gunite repair work completed within the provisions of the plans and specifications, without evidence of defective workmanship or materials, is constructive fraud; hence it is not a condition precedent to plaintiff's right to payment for that work.

### IX.

■ The first and second counterclaims are without merit because the installation of a two arm distributor in lieu of a four arm distributor and the omission to install certain scum removal equipment, were changes from the original plans and speci-

fications agreed upon by the parties and incorporated in the contract.

### X.

The validity of the third counterclaim in the amount of $75.00 is admitted by the parties.

### XI.

The contract is a binding agreement, properly executed by both parties and fully performed, with the exception noted in paragraph X supra, by the plaintiff.

### XII.

The defendant has the burden of proving the invalidity of the execution of the contract or the debt accruing as a result of performance thereunder. It has not sustained the burden of proof.

### XIII.

It is the conclusion of the court that the plaintiff is entitled to a judgment in the sum of $8,125.00.